THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL JOHNSON, Defendant-Appellant.

(No. 57331;

First District (2nd Division)—March 13, 1973.

James J. Doherty, Public Defender, of Chicago, (Thaddeus L. Kowalski and Stanley Sacks, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Richard S. Jalovec, *Assistant State's Attorneys, of counsel,*) for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

In complaint No. 71-MCI-567927, Michael Johnson (hereinafter the defendant) was charged with failure to have in his possession a State Firearms Owner Identification Card at a time when he was in constructive possession of an assembled loaded 12-gauge double-barreled shotgun —all in violation of Ill. Rev. Stat. 1971, Chapter 38, Section 83—2(a). Defendant was also charged with failure to register the said weapon in violation of an ordinance of the City of Chicago. Originally he had been additionally charged with grand theft of an automobile and with the unlawful use of a weapon, but, prior to trial, the State had moved to dismiss these latter two charges with leave to reinstate. In a bench trial on pleas of not guilty to the two charges first stated above, defendant was found guilty of the charge first stated above, and not guilty of the second. After a hearing in aggravation and mitigation, he was sentenced to one year in the State Prison Farm at Vandalia, a sentence which is the maximum authorized sentence for the offense.

The sole issue presented in this appeal is whether or not the sentence is excessive, and we are urged to exercise the power vested in us under Supreme Court Rule 615 (Ill. Rev. Stat. 1971, Chapter 110(A), Section 615) to reduce it.

■■ In order to evaluate the appropriateness of the length of the sentence, we must consider the facts brought out at the trial and at the hearing in aggravation and mitigation.

At the trial, the sole witness for the State was Officer Frank Damico of the Chicago Police Department. He testified that, at about 2:00 A.M. on 14 June 1971, while he was alone on routine patrol in a police car, he observed a car being driven at a speed greater than the authorized speed limit. He gave chase and the car attempted to out-distance him. During the chase, he learned over the radio that the car was a stolen car, and he observed that the car had four male occupants: the driver and one passenger in the front seat, and the two other passengers in the rear seat. After a chase of some three blocks, the fleeing car stopped and all four men got out of the car and began to flee on foot. The officer apprehended the defendant about seven to twelve feet from the car. The officer testified that the defendant was the occupant of the front passenger seat,

and that he (the officer) had had the defendant in view at all times from the moment the car stopped until the moment he apprehended the defendant. Returning to the car with the defendant, the officer saw on the floor of the car, immediately in front of the front passenger seat so that it would be approximately at the feet of the front seat passenger, an assembled double-barreled 12-gauge shotgun with the barrels pointing toward the driver's (or left) side of the car and the stock pointing toward the right side of the car. The gun was found to be loaded. Thereupon, the officer asked the defendant to produce a State Firearms Owner Identification Card, which defendant was unable to do.

Defendant testified in his own behalf. He stated that the driver of the car, whom he knew casually, had offered to drive defendant and a friend of his to their homes; that he and his friend had accepted the offer and had gotten into the rear seat of the car; that he was seated on the left hand side of the rear seat directly in back of the driver, and his friend on the right hand side directly in back of the front seat passenger; that he had seen the gun, but had never touched it; and that he and his friend had been in the car for only about five minutes when the police officer began to chase the car. He conceded that he had not had a State Firearms Owner Identification Card in his possession. His friend testified and essentially corroborated the defendant's testimony.

■■ At the hearing in aggravation and mitigation, the State, in aggravation, offered merely the facts of the case as testified to by Officer Damico. In mitigation, it was established that the defendant was 18 years old, was working and living at home with his parents, and had no prior criminal record. In addition, there was, of course, no evidence that defendant had used the gun.

In imposing the maximum authorized sentence of one year, the trial judge indicated what he had in mind by saying:

> "Here is a situation where there are four young men in an automobile, a high speed police chase for three blocks * * *, it is two o'clock in the morning * * * sawed off, loaded shotgun * * * if ever in my humble opinion, if ever the streets are to be made safe in Chicago, as much as we can, and if ever the maximum penalty prescribed is to be given, this would be and it is the type of case."

We note that the trial court must have believed the testimony of Officer Damico and disbelieved the testimony of defendant and his friend. It is elementary that the credibility of witnesses is peculiarly a matter for the discretion of the trial court. We note also that, presumably from the visual inspection of the gun at the trial, the court described the shotgun as "sawed-off", a significant circumstance in sentencing. The trial judge's

summation of the circumstances which he had in mind in imposing the maximum authorized sentence is also significant (bearing in mind that the court must have disbelieved the testimony of the defendant and his friend): Four young men in a stolen car at two o'clock in the morning, speeding and then attempting to out-distance a pursuing police car in a high speed chase of three blocks, with an assembled loaded double-barreled 12-gauge sawed-off shotgun lying at the feet of the front seat passenger. We note further that the charge of unlawful use of a weapon was dismissed by the State, and that this charge was potentially far more serious than the offenses prosecuted, *if* the length of the barrels of the sawed-off shotgun was less than 18 inches (a fact as to which the record affords us no information). Ill. Rev. Stat. 1971, Chapter 38, Section 24—1(b).

■■ On this state of the evidence, we cannot say that the sentence is manifestly excessive so as to call for what is intended to be a rare exercise of our power to reduce it under Supreme Court Rule 615.

Judgment and sentence affirmed.

STAMOS, P. J., and LEIGHTON, J., concur.